**In the Interest of JOHN DOE**, born on August 3, 1977, Juvenile–Appellant

NO. 15299

(FC–J NO. 91–55223)

MARCH 25, 1992

PADGETT, ACTING C.J., HAYASHI, WAKATSUKI, AND MOON, JJ., AND INTERMEDIATE COURT OF APPEALS CHIEF JUDGE BURNS, IN PLACE OF LUM, C.J., RECUSED

OPINION OF THE COURT BY MOON, J.

Minor John Doe (Minor) appeals from the order of the Family Court of the First Circuit, adjudicating him a law violator under Hawaii Revised Statutes (HRS) § 571–11(1),[1] based on its ruling that he was in possession of a "butterfly" knife in violation of HRS

---

[1] HRS § 571–11(1) provides:

Except as otherwise provided in this chapter, the court shall have exclusive original jurisdiction in proceedings:

§ 134–52. Minor raises two points on appeal: 1) whether a butterfly knife is prohibited as a type of switchblade knife under HRS § 134–52; and 2) whether HRS § 134–52 is unconstitutionally vague as applied to butterfly knives. Based on the language and legislative history of § 134–52, we conclude that a butterfly knife is not a switchblade knife, and therefore reverse the order of the family court. Consequently, we do not reach Minor's second contention of error.

## I.

On August 11, 1989, a butterfly knife was found in Minor's possession. He was subsequently charged with possession of a switchblade knife in violation of HRS § 134–52.

Prior to trial, Minor entered an oral motion to dismiss the charge, contending that butterfly knives are not switchblade knives because they do not fall within the definition of switchblade knives set forth in § 134–52. Minor argued that butterfly knives do not "open[] automatically by [force] of inertia, gravity, or both." HRS § 134–52(a)(2).

In response, the State called Officer Wayne Cambra to demonstrate the operation of a butterfly knife. Following the demonstration and argument, the family court concluded that the butterfly knife comes within the scope of HRS § 134–52 because it does open "at least" by gravity. Subsequently, Minor's motion to dismiss was denied. Based on the court's finding that he was in

---

(1) Concerning any person who is alleged to have committed an act prior to achieving eighteen years of age which would constitute a violation or attempted violation of any federal, state, or local law or municipal ordinance. Regardless of where the violation occurred, jurisdiction may be taken by the court of the circuit where the person resides, is living, or is found, or in which the offense is alleged to have occurred.

possession of a butterfly knife, Minor was adjudicated as a law violator under HRS § 571–11(1). This timely appeal followed.

## II.

The dispositive issue on appeal is whether a butterfly knife is a "switchblade knife" within the meaning of HRS § 134–52. That section provides, in part:

> **Switchblade knives; prohibitions; penalty.** (a) Whoever knowingly . . . possesses . . . any switchblade knife, being any knife having a blade *which opens automatically* (1) by hand pressure applied to a button or other device in the handle of the knife, or (2) *by operation of inertia, gravity, or both*, shall be guilty of a misdemeanor. (Emphasis added.)

Minor contends that since the butterfly knife does not open "automatically by operation of inertia, gravity, or both," the statute is inapplicable. The State argues "to open 'automatically,' does not preclude the use of some hand or wrist action in conjunction with inertia, or gravity, or both to open a butterflyknife."

Our examination of the butterfly knife in issue reveals that the knife has a split metal handle which encases a single–edged blade when in a closed position. The knife may be locked in the closed position by using a metal safety clasp at the base of the handle. The clasp keeps the halves of the handle together. In order to open the knife, the clasp must be unlocked; then, both halves are folded away from each other until they meet, exposing the blade. By holding both halves of the handle firmly together, the blade is then in a secured position to be used. The metal clasp, which locks the handle in a closed position, may also be used to lock the handle in the open position.

At trial, a police officer demonstrated the speed with which the butterfly knife could be put into operation. In describing the demonstration for the record, the prosecutor stated:

> Your Honor, for the record, the knife can be clasped in one hand with the safety hooked on the bottom. Even if the safety is hooked, it can be released with one hand — with the small finger of the hand, held — turned around — one — one side of the blade held, turned around, flipped over and *automatically caught with the other hand*, exposing the blade in just a few seconds. (Emphasis added.)

In our examination, we manipulated the knife and determined that the blade can be positioned for use with one hand or, as the officer demonstrated, with two hands. We agree that either method of operation can be performed in a few seconds. However, we disagree with the accuracy of the prosecutor's characterization of "*automatically* caught with the other hand." In context, such a maneuver is clearly manual and not "automatic." Some practice is required in order to develop the requisite skill to position the blade for use in a matter of seconds, whether using one or both hands.

There are no Hawaii cases that address the issue in this case and review of the legislative history of HRS § 134–52 does not expressly indicate whether the intent of the legislature was to include butterfly knives under the statute. However, the history of the statute does reveal that the statute is based on the Federal Switch Blade Knife Act, 15 U.S.C. § 1241. We note that the Act's definition of "switchblade knife" is identical to HRS § 134–52.[2]

---

[2] The Federal Switch Blade Knife Act defines "switchblade knife" as follows:

The term "switchblade knife" means any knife having a blade which opens automatically — (1) by hand pressure applied to button or other

We agree with the State that "the language [of the legislative history] suggests that the Hawaii legislature intended the same result as the federal statute." State's Answering Brief at 13. The State cites language from the federal legislative history which indicates that Congress intended to prohibit not only switchblade knives but "other concealed–blade knives which open by operation of inertia or gravity or both," which like switchblades are "quick–opening knives [used] for criminal purposes[.]" State's Answering Brief at 14.

The district court in *Taylor v. McManus*, 661 F. Supp. 11 (E.D. Tenn. 1986), *rev'd*, 848 F.2d 715 (6th Cir. 1988), was faced with the identical issue as in this case. There, Taylor, an importer of "Balisong" or butterfly knives, brought action requesting the court to declare that such knives, which had been seized by Customs Service officers, were not switchblades within the meaning of 15 U.S.C. § 1241(b). Looking to the legislative history of the federal switchblade act for guidance, the district court stated:

> In examining the congressional record, it seems obvious that congress intended to prohibit knives which opened automatically, ready for use. Rep. Kelly, for example, described the switchblade "as a weapon (which) springs out at the slightest touch and is ready for instant violence." *Switchblade Knives: Hearings Before a Subcommittee of the Committee on Interstate and Foreign Commerce*, House of Rep., 85th Cong., 2d Sess. 13, 29 (1958). She also noted that the prohibited gravity knife opens and "anchors in place automatically. Every bit as fast as the switchblade, it has proved to be as effective a killer." *Id.* at 29. Similarly, Rep. Delaney described the

device in the handle of the knife, or (2) by operation of inertia, gravity, or both.

15 U.S.C. § 1241(b) (1988).

prohibited gravity knives as "knives (which) open *and lock* automatically at a quick flick of the wrist." 104 CONG.Rec., 85th Cong., 2nd [sic] Sess. 12398 (June 26, 1958) (emphasis supplied). Apparently, then, Congress was not concerned with whether the knife's blade would *merely be exposed by gravity.* Instead, *they intended "open" to mean "ready for use"*, [emphasis added] as exhibited in Rep. Kelly's testimony that the switchblade opened "ready for instant violence" and her and Rep. Delaney's comments that the gravity knife opened *and locked* automatically [emphasis in original]. While the Court does not intend to read into the Statute a requirement that the blades "lock" automatically, it does seem apparent that Congress intended "open" to mean "ready for use". Obviously a knife that has not locked into an open position is not ready for use. Since the Balisong knives cannot be used until the second handle is manually folded back and clasped, the Court finds that they do not open automatically by force of gravity or inertia.

661 F. Supp. at 14–15.

The district court in *Taylor* found that butterfly knives were not prohibited switchblades under the federal definition of switchblade knife. The court found that "the knives do not operate automatically since they require at least two manual operations even after the blade is exposed: (1) grasping and folding the second handle and (2) fastening the clasp which locks the handles together." *Id.* at 15.

We acknowledge that the holding of the district court was reversed by the Sixth Circuit Court of Appeals, but we note that the reversal was based on a standard of review of the Customs Service's decision in its interpretation of a statute and its regulation. The court of appeals stated that "the construction of [a] statute by the agency charged with its administration is entitled to substantial

deference. . . . If the agency's construction is a reasonable one, the court should give deference to it." 848 F.2d at 718. The court of appeals explained that

> [w]hile it may be reasonable to interpret the legislative history and the language of the statute [as] not to include these Balisong knives in question because they require some additional hand movements to be ready to use, we cannot set aside the Customs Service's *equally rational* interpretation of the statute and its regulations issued thereunder.

*Id.* at 720 (emphasis added).

Furthermore, the knife in *Taylor* was a double–bladed knife, and therefore different than the single–bladed knife at issue in this case. The *Taylor* court did not determine that the butterfly knives were per se illegal under the Federal Switch Blade statute. On the contrary, since "[t]he government indicated that had the knives been "designed with a single–edge blade and were primarily used for utilitarian purposes' rather than 'double–edge stiletto–style blades' [that] they would have been admitted[,]" the court permitted the importer to modify the knives from double–edge to single–edge blades to comply with the Customs Service's regulations. *Id.* Thus, under the *Taylor* holding, the butterfly knife in the present case would have passed both the Customs Service's and the court's scrutiny.

Moreover, we note that the District Court for the District of Oregon held that butterfly knives were not prohibited under the Federal Switch Blade Act, stating: "Although a person with the requisite skill can rapidly open a Balisong knife with one hand, the knives do not have blades which open automatically by operation of inertia, gravity, or both." *Taylor*, 661 F. Supp. at 13 (citing *United States v. 1,044 Balisong Knives*, Civ. No. 70–110 (D.C. Oregon 1970)).

III.

We find that the user of the butterfly knife in this case is required to use more than just a "flick of the wrist" to make it operational. Thus, we conclude that it is not a knife "which [blade] opens automatically . . . by operation of inertia, gravity, or both[.]" HRS § 134–52. Accordingly, the order of the family court is reversed.

*Tim T. Tate* (*Theodore Y. H. Chinn* on the brief), Deputy Public Defenders, for Juvenile–Appellant.

*Alexa D. M. Fujise*, Deputy Prosecuting Attorney, for Appellee State of Hawaii.